**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAIRO MEJIA HERRERA,<br><br>Petitioner,<br><br>v.<br><br>LUIS SOTO, et al.,<br><br>Respondents. | Civil Action No. 26-4527 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner's habeas petition (ECF No. 1) challenging his ongoing immigration detention. Following an order to answer, the Government filed responses to the petition and motion (ECF Nos. 5, 11), to which Petitioner has replied. (ECF Nos. 6-9, 13.) For the following reasons, Petitioner's habeas petition shall be denied without prejudice.

## I. BACKGROUND

Petitioner is a native and citizen of Colombia. (ECF No. 5-1 at 1.) On April 17, 2022, Petitioner was encountered by border patrol agents and taken into custody while in the process of crossing the border without admission or inspection shortly after he swam across the Rio Grande River. (*Id.* at 2-3.) Petitioner was processed for expedited removal and determined to be inadmissible based on his unlawful border crossing that same day. (ECF No. 5-4.) Petitioner claimed a credible fear of return to his home country, however, based on his religious faith. (ECF No. 5-2.) Based on this credible fear claim, Petitioner was referred by immigration officials for

the completion of a credible fear interview and determination. (ECF No. 11-1 at 2.) Petitioner was thereafter paroled in the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) on April 26, 2022, and released from detention. (ECF No. 1-3; ECF No. 5-5; ECF No. 5-6.) Petitioner remained at liberty on parole in the United States until March 30, 2026, when he was called in for his credible fear interview. (ECF No. 11-1 at 2.) Following that interview, Petitioner's parole was revoked and Petitioner was taken into immigration custody pursuant to 8 U.S.C. § 1225(b)(1). (*Id.*) Petitioner has remained in detention since that time. (*Id.*)

On May 20, 2026, immigration officials found Petitioner to lack a credible fear of return to his home country. (*Id.*) Petitioner sought review of that determination by an immigration judge, and the immigration judge affirmed the negative credible fear finding on June 1, 2026, completing Petitioner's expedited removal proceedings. (*Id.*) The immigration judge therefore ordered that Petitioner's case be "returned to DHS for removal of the applicant." (ECF No. 13-4 at 7.) DHS subsequently sought and was granted a dismissal of a notice to appear[1] for further removal proceedings previously issued for Petitioner on July 24, 2026, as Petitioner was now subject to expedited removal. (*Id.*)

## II. **LEGAL STANDARD**

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

[1] Petitioner in some of his letters framed this dismissal as a dismissal of his removal proceedings. (*See* ECF No. 9.) Given the outcome of his credible fear determination and the completion of expedited removal proceedings, however, it is clear that this is not the case. The notice to appear was dismissed *because* the completion of credible fear review by the IJ was essentially the final step in expedited removal. The completion of that review thus rendered the notice to appear unnecessary, hence its dismissal. Indeed, the immigration judge's order denying credible fear and directing Petitioner be returned to DHS specifically states that it is a final order not subject to appeal which completes the expedited removal process. (ECF No. 13-4 at 7.)

§ 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III. DISCUSSION

In this matter, Petitioner challenges his ongoing immigration detention without a bond hearing, which Petitioner contends is unlawful as he should only be subject to detention under 8 U.S.C. § 1226(a) under which he would be entitled to a bond hearing. The Government instead contends that he is detained pursuant to 8 U.S.C. § 1225(b)(1). Aliens who attempt to enter the United States illegally and who are detained during or shortly after making an unlawful crossing of the border are "treated as an applicant for admission' and subject to the terms of § 1225(b)(1). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020). As the Third Circuit has explained, "[u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States[;]' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border." *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to § 1225(b)(1) are generally issued an expedited removal order unless they claim a credible fear of persecution should they be deported, in which case they may be referred for further proceedings regarding that fear. *Id.* Pursuant to the statute, aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout removal or credible fear proceedings, though the Government may, in its discretion, temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287-

88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's credible fear or removal proceedings, after which an alien would have a final order of removal, and detention under the statute ends with the Petitioner's removal pursuant to that Order. *Id.* at 300-03.

Section 1226(a) instead provides that an alien subject to removal proceedings "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." When the Government takes an alien into custody under this statute, however, the alien is entitled to seek release on bond through a hearing before an immigration judge at which they bear the burden of showing that they are neither a flight risk nor a danger to the community. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018). Aliens taken into custody within the United States after having entered and remained in the United States for several years are therefore generally entitled to a bond hearing under the statute. *See, e.g.*, *Aguilar Ramos v. Soto*, No. 25-15315, 2025 WL 3251447 (D.N.J. Nov. 21, 2025).

Here, the parties dispute whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). Petitioner in this matter was taken into custody immediately after crossing the border while still in close proximity to the border. Petitioner therefore clearly falls into the category of aliens encountered within fourteen days of illegally crossing the border and within 100 air miles of the border, who are subject to the expedited removal and mandatory detention provisions of § 1225(b)(1). *Castro*, 835 F.3d at 425. Indeed, the Government clearly considered Petitioner to be subject to the statute as they issued him a determination of inadmissibility on a notice and order of expedited removal form. (ECF No. 5-4.) That fact that Petitioner was paroled does not change the applicability of section 1225(b)(1) and mandatory detention to him. *See Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *2-3 (D.N.J. Jan. 8, 2026). As this Court explained in *Faqirzada*,

> Even where an alien is granted humanitarian parole prior to a final decision on his removal proceedings, he does not cease being subject to § 1225(b)(1). As the parole statute makes clear,
>
> > such parole of an alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission.
>
> 8 U.S.C. § 1182(d)(5)(A). Aliens who are paroled are thus subject to the "entry fiction" in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude. *See, e.g., Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *6 (D.N.J. Jan. 29, 2018); *see also Pipa-Aquise v. Bondi*, No. 25-1094; 2025 WL 2490657, at * 1-2 (E.D. Va. Aug. 5, 2025). Federal courts generally lack jurisdiction to review the exercise of discretion embodied in the Government's decisions to grant or deny parole. *See Ashish v. Att'y Gen.*, 490 F. App'x 486, 487 (3d Cir. 2013) (citing 8 U.S.C. §§ 1182(d)(5)(A) & 1252(a)(2)(B)(ii)).

*Faqirzada*, 2026 WL 63614, at *2-3.

Because aliens who are paroled from mandatory detention remain subject to mandatory detention when their parole is terminated, upon the Government's discretionary decision to terminate parole, such aliens must return or be returned to custody and detained throughout their proceedings as if they had remained at the border throughout the entirety of their parole. *Id.*; *see also Shakibullah Noori v. Soto*, No. 26-951, 2026 WL 631642, at *2 (D.N.J. Mar. 5, 2026) (release on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) requires a return to mandatory detention status when the Government chooses to terminate parole); *Salama v. Soto*, No. 25-18990, 2026 WL 368935, at *2 (D.N.J. Feb. 10, 2026) (alien re-detained after being released on parole remains subject to mandatory detention under 8 U.S.C. § 1225(b)(1)); *Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *2 (D.N.J. February 2, 2026) (same).

In this matter, Petitioner was taken into custody pursuant to 8 U.S.C. § 1225(b)(1) and was then provided humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Pursuant to the humanitarian parole statute, he was therefore required to "return or be returned to the custody from which he was paroled" and be treated as any other applicant for admission subject to mandatory detention upon the Government's discretionary decision to end his parole. *Salem v. Tsoukaris*, No. 25-17414, 2026 WL 458302, at *2 (D.N.J. Feb. 18, 2026). Petitioner is therefore properly subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(1), and his detention under that statute is lawful until his expedited removal proceedings terminate with the issuance of a final expedited removal order and Petitioner's removal pursuant to that order.[2] *See Jennings*, 583 U.S. at 287, 302-03. Petitioner's assertion that he is not subject to mandatory detention or is entitled to a bond hearing is therefore without merit.

Even were the Court to also construe Petitioner to be raising a claim asserting that his detention had become unduly prolonged at this point in his follow up letters, Petitioner would still not be entitled to relief at this time. Courts in this district have long recognized that an alien subject to mandatory detention may be entitled to a corrective bond hearing where their detention becomes so prolonged as to become arbitrary. *See Salem*, 2026 WL 458302, at *3; *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442 (D.N.J. 2019) (nineteen month detention so unreasonable as to be arbitrary and amount to a denial of due process); *see also German Santos v. Warden*, 965 F.3d 203 (3d Cir. 2020) (finding that prolonged detention under the similar mandatory detention provision

[2] Alternatively, the issuance of a final removal order, such as that issued at the completion of his credible fear proceedings in June 2026, could render Petitioner subject to detention under 8 U.S.C. § 1231(a), under which Petitioner would be subject to mandatory detention throughout a ninety day removal period and for a presumptively reasonable period of up to six months. To the extent Petitioner's June 1 order from the immigration judge is effectively a final expedited removal order as it completes the necessary proceedings, Petitioner would also lawfully be subject to detention under § 1231(a) and his current detention presumptively reasonable. Because the parties do not explicitly raise § 1231(a) at this time, however, the Court need not reach that question at this time.

of 8 U.S.C. § 1226(c) can, after considering relevant circumstances, become so prolonged as to warrant a bond hearing where an alien has been detained for an extended period, such as the two-and-a-half-year period at issue for petitioner). Given the interests involved, however, courts have on many occasions found that detention of less than a year under 8 U.S.C. § 1225(b) was not so prolonged as to be arbitrary, *see Yacouba T. v. Decker*, No. 18-13879, 2019 WL 1569823 (D.N.J. Apr. 10, 2019) (collecting cases), while periods in excess of fifteen months have often been found unreasonable. *Tuser E.*, 370 F. Supp. 3d at 443.

Here, Petitioner has been detained only since the end of March 2026—less than five months. Given the fact that his removal proceedings proceeded at pace and the immigration judge completed his credible fear proceedings in June, this Court finds that that period of detention is not so prolonged as to amount to an arbitrary application of the statute. Particularly, in light of the lack of clear argument addressing the similarity of his current detention to criminal detention, and the lack of any clear delay in his underlying removal proceedings. *Yacouba T.*, 2019 WL 1569823, at *3; *see also German Santos*, 965 F. 3d at 211 (factors considered in determining lawfulness of continued mandatory detention include the length of detention, the likelihood of lengthy continued detention in the future, the reasons for delay in removal proceedings, and whether the alien's conditions of confinement are "meaningfully different[] from criminal punishment"). Petitioner's ongoing detention does not violate Due Process at this time, and Petitioner's habeas petition must therefore be denied without prejudice.

## IV. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED WITHOUT PREJUDICE.** An order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE